UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RONALD JAY LORIGO, | ) | 1:08-CV-00972 AWI JMD HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATION |
| | ) | REGARDING PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| K. CLARK, et al., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

Petitioner Ronald Jay Lorigo ("Petitioner") is a State prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a sentence of fifteen years to life for a conviction in 1988 for second degree murder. (Answer Ex. 1).

Petitioner does not challenge his conviction in this action; instead, Petitioner challenges the decision by the California Board of Parole Hearings (the "Board"), whom he appeared before in October 2005 for a parole consideration hearing. (Answer at 1). The Board found Petitioner unsuitable for parole.

Petitioner subsequently filed a petition for writ of habeas corpus with the Los Angeles County Superior Court, challenging the Board's denial of parole. (*See* Answer Ex. 2). The Los Angeles County Superior Court issued a reasoned opinion rejecting Petitioner's claims. (*See* Answer Ex. 3).

1   Petitioner filed a petition for writ of habeas corpus with the California Court of Appeal.  (*See*
2  Answer Ex. 5).  The Court of Appeal issued an opinion rejecting Petitioner's claim for failing to
3  "state sufficient material facts or provide an adequate record to permit independent judicial review of
4  Petitioner's entitlement to relief."  (Answer Ex. 6).

5   Petitioner also a filed a petition for review to the California Supreme Court, which summarily
6  denied the petition.  (*See* Answer Exs. 7, 8).

7   On February 8, 2008, Petitioner filed the instant federal petition for writ of habeas corpus.
8  (Court Doc. 1).

9   On December 4, 2008, Respondent filed a response to the petition.  Respondent admits that
10  Petitioner has exhausted his state remedies and that the instant petition is timely.  (Answer at 2).

## FACTUAL BACKGROUND

As the facts of the commitment offense are relevant to determining whether Petitioner is suitable for parole, the Court recites the facts as stated in the record of the parole hearing.  *See* Cal. Code Regs., tit. 15, § 2402(c)(1).  The Board incorporated into the record a summary of the offense, taken from the August 2004 Board Report, which stated that:

> On November 23rd, 1982 at approximately 12:45 a.m. [Petitioner] was driving while under the influence of alcohol on Chandler Boulevard at a high rate of speed, in excess of 60 miles per hour. [Petitioner] entered the intersection of Coldwater Canyon and Chandler Boulevard against the red light.  He collided with an automobile driven by Takita Cazanori (phonetic).  The impact forced Cazanori's vehicle into the third vehicle driven by Jason Peterson.  Cazanori and Peterson were traveling northbound on Coldwater Canyon. [Petitioner] sustained multiple facial fractures due to hitting the windshield.  Cazanori sustained multiple body traumas, internal bleeding, and a fractured neck and leg.  Cazanori was pronounced dead at the hospital at 2:05 a.m.  Peterson sustained a contused cut lip and pain to his back.  Cazu (phonetic) Tsuchihash, who was a passenger in Cazanori's vehicle, sustained facial fractures and broken ribs.  As [Petitioner] was being removed from his vehicle, the paramedics state [Petitioner] was laughing.  At the hospital, a police officer saw [Petitioner[ trying to sing and snap his fingers. [Petitioner] smelled of alcohol, and was tested by a blood sample, which was analyzed and determined to have a .23 blood alcohol level.

(Parole Hearing Transcript, at 17-18).

When questioned, Petitioner affirmed to the Board that this version of events was correct as he recalled the events.  (Id).

\\\

\\\

**DISCUSSION**

**I.     Jurisdiction and Venue**

A person in custody pursuant to the judgment of a State court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution stemming from the Board's denial of parole.  Petitioner is currently incarcerated at the California Substance Abuse Treatment Facility and State Prison in Corcoran, California.  (Pet. at 2).  Corcoran is located in Kings County  and is consequently within this judicial district.  28 U.S.C. § 84(b).  Thus, the Court has jurisdiction over and is the proper venue for this action.  *See* 28 U.S.C. § 2241(d).

**II.    ADEPA Standard of Review**

All petitions for writ of habeas corpus filed after 1996 are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted by Congress on April 24, 1996.  *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert*. *denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), *cert*. *denied*, 520 U.S. 1107 (1997), *overruled on other grounds by Lindh*, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)).  The instant petition was filed in 2008 and is consequently governed by AEDPA's provisions.  *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003).  While Petitioner does not challenge his underlying conviction, the fact that Petitioner's custody arises from a State court judgment renders Title 28 U.S.C. section 2254 the exclusive vehicle for Petitioner's habeas petition.  *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that § 2254 is the exclusive vehicle for a habeas petitioner in custody pursuant to a State court judgment even though he is challenging the denial of his parole).

Under AEDPA, a petition for habeas corpus "may be granted only if [Petitioner] demonstrates that the State court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of

the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see also Lockyer*, 538 U.S. at 70-71.  As a threshold matter, this Court must "first decide what constitutes 'clearly established federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* (quoting *Williams*, 592 U.S. at 412). "In other words, 'clearly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the State court renders its decision." *Id.*

Finally, this Court must consider whether the State court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law." *Lockyer*, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the State court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the State court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the State court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant State court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established law was "objectively unreasonable." *Id.* at 409.

Petitioner bears the burden of establishing that the State court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a State court decision is objectively unreasonable. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *Duhaime v.*

*Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that a federal habeas court give considerable deference to State court's decisions. The State court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). Furthermore, a federal habeas court is bound by a State's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

The initial step in applying AEDPA's standards requires a federal habeas court to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, the Court analyzes the last reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). The Ninth Circuit has further stated that where it is undisputed that federal review is not barred by a State procedural ruling, "the question of which state court decision last 'explained' the reasons for judgement is therefore relevant only for purposes of determining whether the state court decision was 'contrary to' or an 'unreasonable application of' clearly established federal law." *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). Thus, a federal habeas court looks through ambiguous or unexplained State court decisions to the last reasoned decision in order to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. *Id*; *see also Ylst v. Nunnemaker*, 501 U.S. at 804.

Here, the Court of Appeal issued an opinion rejecting Petitioner's claim as "[t]he petition does not state sufficient material facts or provide an adequate record to permit independent judicial review of petitioner's entitlement to relief." (Answer Ex. 7) (citing *People v. Duvall*, 9 Cal.4th 464, 474-475 (Cal, 1995). As the appellate court cited to *Duvall*, which indicates that Petitioner failed to allege facts with particularity, the Court "look[s] through" the appellate court's decision to the last reasoned decision; namely, that of the Los Angeles County Superior Court.[1]

---

[1] The appellate court also stated that, "[c]ontrary to the contentions of the petition, denial of parole may lawfully be based solely upon the particular circumstances of the inmate's commitment offense indicating that the inmate currently presents an unreasonable risk of danger to society or a threat to public safety if released on parole." (Answer Ex. 7). In light of the fact that the appellate court itself concluded that there was insufficient facts and/or an inadequate record to permit the

### III. Review of Petitioner's Claim

Petitioner contends that his continued incarceration, after serving twenty years on his fifteen years to life sentence, is illegal as the Board's decision to deny him parole was not supported by some evidence. Petitioner further argues that the Board's reliance on his commitment offense violates his right to due process of the law.

As noted earlier, the dispositive inquiry before this Court is whether the last reasoned decision by the State court was an unreasonable application of clearly established federal law. *See Williams*, 529 U.S. at 407-408 (explaining that where there is no factually on-point Supreme Court case, the State court's determination is subject to the unreasonable application clause of 28 U.S.C. § 2254).

### *A. Legal Standard for Denial of Parole*

"We analyze a due process claim in two steps. '[T]he first asks whether there exist a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Sass*, 461 F.3d at 1127. The United States Constitution does not, by itself, create a protected liberty interest in a parole date. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981). In briefs submitted to the Court, Respondent argues that Petitioner does not have a liberty interest in parole despite recognizing the existence of Ninth Circuit authority to the contrary. (Answer at 2-3). The Ninth Circuit has held that a prisoner possess a liberty interest in parole where mandatory language in a State's statutory scheme for parole creates a presumption "that parole release will be granted' when or unless certain designated findings are made, and thereby give rise to a constitutional liberty interest.'" *McQuillion v. Duncan*, 306 F.3d 895, 901 (9th Cir. 2002) (quoting *Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979) in holding that California's parole scheme gives rise to a cognizable liberty interest in release on parole). California Penal Code section 3041 contains the requisite mandatory language, thus vesting California prisoners "whose sentence provide for the possibility of parole with a constitutionally

---

appellate court to conduct judicial review of Petitioner's claim, the Court presumes that the appellate court's statement does not constitute judicial review of Petitioner's claim. Had the appellate court's decision been the last reasoned State court decision, the Court would question the reasonableness of applying the some evidence standard to a record that was so lacking that the appellate court itself said it could not adjudicate the claim.

protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." *Irons*, 505 F.3d at 850; *see also McQuillion*, 306 F.3d at 903; *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003). Consequently, the Court finds that Petitioner has a protected liberty interest in a parole date.

A finding that a liberty interest exists does not end the Court's inquiry as the Due Process Clause is not violated where the denial of a petitioner's liberty interests follows the State's observance of certain procedural safeguards. *See Greenholtz*, 442 U.S. at 12. Respondent contends that due process merely entitles Petitioner the right to be heard, advance notice of the hearing, and for the Board to state their reasons for denial. (Answer at 3). This contention is based on the argument that the "some evidence" standard does not constitute clearly established federal law and is not applicable to parole denials. (*Id*. at 5).

Respondent is correct in one respect; a parole release determination is not subject to all of the due process protections of an adversarial proceeding. *See Pedro v. Oregon Parole Board*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a Petitioner in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." *Id*. at 1399; *Jancsek v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987). Thus, an inmate is entitled to receive advance written notice of a hearing, be afforded an "opportunity to be heard" and told why "he[/she] falls short of qualifying for parole." *Greenholtz*, 442 U.S. at 16; *see also Pedro*, 825 F.2d at 1399. Here, the Court notes that Petitioner does not allege that she was deprived of any of these procedural safeguards.

The Ninth Circuit has consistently recognized that a prisoner's due process rights are implicated where there is no evidence to support the denial of parole. *Irons*, 505 F.3d at 851; *see also Sass*, 461 F.3d at 1128-1129. "In *Superintendent, Mass. Correc. Inst. v. Hill* [472 U.S. 445 (1985)] the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record.'" *Sass*, 461 F.3d at 1128 (citations omitted). The Ninth Circuit has held that the same standard of "some evidence" that applies to the revocation of good time also extends to parole determinations and that this same standard of judicial review applies to

1  habeas petitions regarding parole denials. *Irons*, 505 F.3d at 851; *Sass*, 461 F.3d at 1128-1129. This
2  evidentiary standard prevents arbitrary deprivations of the prisoner's liberty interest without
3  imposing undue administrative burdens or threatening institutional interests. *Hill*, 472 U.S. at 455.
4  Thus, the Court finds that the "some evidence" standard is applicable to Petitioner's denial of parole.
5      The inquiry of "whether a state parole board's suitability determination was supported by
6  'some evidence'" is framed by the California statutes and regulations governing parole suitability.
7  *Irons*, 505 F.3d at 851; *see Briggs*, 334 F.3d at 915. California law provides that after an eligible life
8  prisoner has served the minimum term of confinement required by statute, the Board "shall set a
9  release date unless it determines that the gravity of the current convicted offense or offenses, or the
10 timing and gravity of current or past convicted offense or offenses, is such that consideration of the
11 public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code §
12 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to
13 society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code
14 Regs., tit. 15, § 2402(a); *see In re Dannenberg*, 34 Cal.4th at 1078, 1080. The Board decides
15 whether a prisoner is too dangerous to be suitable for parole by applying factors set forth in the
16 California Code of Regulations. *See* Cal. Code Regs., tit. 15, § 2402; *Irons*, 505 F.3d at 851-852;
17 *Biggs*, 334 F.3d at 915-916. The regulations permit consideration of "all relevant, reliable
18 information available to the panel," and explicitly calls for consideration of "the base and other
19 commitment offenses, including behavior before, during and after the crime."[2] Cal. Code Regs., tit.
20 15, § 2402(b). Factors supporting a finding of unsuitability for parole include: the underlying
21 offense was carried out in an "especially heinous, atrocious or cruel manner"; a record, prior to
22 incarceration for the underlying offense, of violence; a history of unstable relationships with others;
23 and serious misconduct while incarcerated. Cal. Code Regs., tit. 15, § 2402 (c); *see also In re*

---

[2]The statute specifically states: "All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstance which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability." Cal. Code Regs., tit. 15, § 2402(b).

*Shaputis*, 44 Cal.4th 1241, 1257 n. 14 (Cal. 2008).

### B.     State Court Decision

After reviewing the record, the Court finds that the Los Angles County Superior Court did not unreasonably apply the some evidence standard.  *See* 28 U.S.C. § 2254(d)(1).  The Superior Court's decision thoroughly explained the evidence supporting the Board's decision.  (*See* Answer Ex. 3 at 1-2).  Specifically, the State court found that Petitioner's serious misconduct in prison and psychological evaluation, in addition to his commitment offense, provided ample evidence of Petitioner's current dangerousness.  (Id).

Petitioner's briefing to this Court attempts to argue that reliance on his commitment offense was erroneous, as Petitioner's crime is distinguishable from other particularly egregious crimes. Pursuant to California law, "all second degree murders by definition involve some callousness–i.e., lack of emotion or sympathy, emotional insensitivity, indifference to the feelings and suffering of others.  As noted, however, parole is the rule, rather than the exception, and a conviction for second degree murder does not automatically render one unsuitable."  *In re Smith*, 114 Cal.App.4th 343, 366 (Cal. Ct. App. 2003) (citations omitted); *see also People v. Nieto Benitez*, 4 Cal.4th 91, 102 (Cal. 1992) (stating "[s]econd degree murder is defined as the unlawful killing of a human being with malice aforethought, but without the additional elements–i.e., wilfulness, premeditation, and deliberation–that would support a conviction of first degree murder").  As noted by the State court, "[t]he driver of the car hit by petitioner was killed, while her passenger received serious injuries. Another man was injured as well."  (Answer Ex. 3 at 1).  State regulations classify crimes where "multiple victims were attacked, injured or killed in the same or separate incidents" as a factor in determining whether the commitment offense was committed in an "especially heinous, atrocious or cruel manner."  Cal. Code Regs., tit. 15, § 2402(c)(1)(A).  Thus, the State Court's reliance on this factor was not erroneous.

Petitioner further contends that continued reliance on his commitment offense violates his right to due process of the law.  The California Supreme Court recently held that even where the commitment offense was particularly egregious, reliance on this immutable factor may violate a petitioner's due process rights.  *In re Lawrence*, 44 Cal.4th 1181, 1191 (Cal. 2008).  The *Lawrence*

court found that the intervening twenty-four years in which petitioner, now age sixty-one, had demonstrated, "extraordinary rehabilitative efforts specifically tailored to address the circumstances that led to her criminality, her insight into her past criminal behavior, her expressions of remorse, her realistic parole plans, the support of her family, and numerous institutional reports justifying parole" rendered "the unchanging factor of the gravity of petitioner's commitment offense" no longer probative of "her current threat to public safety, and thus provides no support for the Governor's conclusion that petitioner is unsuitable for parole at the present time." *Id*. at 1226.  Similarly, the Ninth Circuit has previously warned that continued reliance on immutable factors may not comport with the protections of the Due Process Clause.  *See Irons*, 505 F.3d at 854; *Biggs*, 334 F.3d at 917.

However, Petitioner's case is distinguishable from *Lawrence*.  Unlike in *Lawrence*, the Superior Court found that the Board did not rely solely on immutable factors as Petitioner disciplinary record and psychological evaluation supported a finding that Petitioner was currently unsuitable for parole.  Additionally, the Superior Court noted that the psychological evaluation was particularly troubling given the commitment offense.  Unlike in *Lawrence*, where the petitioner remained discipline free for twenty-four years, Petitioner has incurred *eleven* serious disciplinary violations while in prison.  Petitioner's last violation, for trafficking or conspiring to traffic narcotics, occurred in 2000.  (Parole Hearing Transcript at 67-68, ).  As Petitioner's parole hearing occurred in 2005, the infraction was relatively recent and thus highly probative of Petitioner's currently dangerousness.  Furthermore, Petitioner's trafficking in narcotics evidences a lack of rehabilitative effort that makes his commitment offense currently probative as Petitioner's commitment offense was a result of driving under the influence.  This is especially true as the assessment of dangerousness contained in the psychological evaluation–specifically, that Petitioner posed an average risk of danger if released into the community–was predicated on Petitioner remaining substance free.  (Parole Hearing Transcript at 74).  As noted by the Board, the psychological evaluation stated that if Petitioner were to become involved in substance abuse again, the potential for indirect violence would be considerable.  (Id).  The "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.'"  *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).

1  Thus, while the Court acknowledges that there is evidence in the record to support a finding that
2  Petitioner has rehabilitated, as noted by the Board in its discussion of Petitioner's post-incarceration
3  history, the State court reasonably concluded that the commitment offense, when combined with the
4  psychological evaluation and Petitioner's prison disciplinary record, constituted some evidence to
5  support the Board's findings.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    August 17, 2009               /s/ John M. Dixon**
UNITED STATES MAGISTRATE JUDGE